## STINSON *v.* DOOLITTLE *et al.*

### (*Circuit Court, D. Minnesota.* April 14, 1892.)

1. DEEDS—TWICE RECORDED—PRESUMPTIONS—EVIDENCE.
   When the records of a deed in two deed-books differ only in two material points in the description of the property, and the date, grantors, grantee, consideration, acknowledgment, and signature of the notary are the same in each, the presumption is, not that the first book contains the correct record and the other the record of some other deed or of the original deed after a change in the description has been made, but that they are records of the same deed, with mistakes in one of them; and in seeking to determine in which of the two the mistakes are, the original deed being lost, the court will consider the evidence afforded by the records themselves as to which has been more carefully registered, the situation of the property as described in each, and the conduct of the parties in reference to the property in dispute.

2. SAME—EFFECT OF RECORDING.
   Gen. St. Minn. 1878, p. 537, § 21, and Id. p. 805, § 96, do not limit the effect of the register's record of a deed as evidence to the first record of it, but give at least equal weight as evidence to later records properly made.

In Equity. Suit by James Stinson against Ormis H. Doolittle, Charles J. Doolittle, and others to correct a mistake in the record of a deed. Decree for complainant.

This is a suit in equity, and the complainant seeks a decree declaring that a certain deed made by one Benjamin F. Hoyt and wife to David Schellenbarger, dated June 21, 1850, described and conveyed "fifteen and two one-hundredths acres off the south side of the north-west quarter of the north-west quarter of section number thirty, (30,) in township number twenty-nine (29) north, of range number twenty-two (22) west of the fourth principal meridian;" that this deed was by mistake so recorded in Book A of Deeds, pages 492 and 493, of the Ramsey county records, that the same read "fifteen and two one-hundredths acres off the north side" of the quarter quarter mentioned above; that such deed did not in fact describe this north 15.02 acres of the quarter quarter mentioned above; that, so far as the same relates to this tract of land, this deed was correctly recorded in Book K of the Ramsey county records, at pages 129 and 130, on October 6, 1854; that the defendants Ormus H. Doolittle and Charles J. Doolittle, who derive their title to the 15.02 acres off the north side of said 40-acre tract through a quitclaim deed from David Schellenbarger and wife to Charles J. Doolittle, dated September 10, 1888, and recorded August 22, 1889, in Book 227 of Deeds, at page 543, be declared to have no title to this

tract as against the complainant, who derives his title from Benjamin F. Hoyt; and that the conveyances in the chain of title from Schellenbarger to Ormus H. Doolittle, and the records thereof, be decreed to be void as against the complainant. The bill alleges that Benjamin F. Hoyt, being the owner of the W. ½ of the N. W ¼ of section 30, on June 21, 1850, conveyed the S. W. ¼ of the N. W. ¼ of said section, which contained 34.98 acres, and 15.02 acres off the south side of the N. W. ¼ of the N. W. ¼ of said section, to David Schellenbarger, making a tract of 50 acres in one body; that this conveyance was so recorded in Book A of Deeds, pp. 492, 493; that the 15.02 acres was erroneously described therein as off the north side instead of off the south side of said N. W. ¼ of the N. W. ¼ of said section; that on the 6th day of October, A. D. 1854, this deed was again recorded in Book K of Deeds, on page 129, and that in this second record the 15.02 acres was properly described as off the south side of said quarter quarter; that the title of Benjamin F. Hoyt to this 15.02 acres off the north side of the N. W. ¼ of the N. W. ¼ passed by mesne conveyances to, and in November, 1856, vested in, the complainant, James Stinson, who, on or prior to October 24, 1884, had also become the owner of the balance of this quarter quarter, and that the deeds evidencing his chain of title from Hoyt to the entire quarter quarter were prior to that time duly recorded; that in October, 1884, the complainant platted the entire tract last mentioned as "Stinson's Rice-Street Addition to St. Paul," duly recorded his plat, and sold and conveyed by deeds, with covenants of warranty, to divers persons, lots situated upon said north 15.02 acres, and some of his grantees were in open possession of their lots on said tract prior to September 10, 1888, under his deeds; that complainant still owns lot 4, block 4, and blocks 2 and 3, of said addition, which are a part of said north 15.02 acres, and are worth $18,000; that on September 10, 1888, defendant Charles J. Doolittle, with intent to cloud the title of and injure the complainant, obtained from Mr. Schellenbarger a quitclaim deed of said north 15.02 acres to himself; that in August, 1889, he made a deed of this tract to defendant Ormus H. Doolittle, who in turn made a mortgage to Charles J. on said tract for $2,700, and this mortgage and these two deeds were recorded in August, 1889, and that the defendants had full knowledge of the facts alleged in the bill when they obtained their respective deeds; that the tract which these deeds describe is worth $60,-000, and the defendant Ormus H. Doolittle claims title to it under these deeds, and defendant Charles J. Doolittle claims a lien to the amount of the mortgage thereon, and these deeds, records, and claims cloud his title and prevent the sale of his lands. The answer admits that Benjamin F. Hoyt, on June 21, 1850, owned the W. ½ of the N. W. ¼ of section 30; that on that day he made the deed in question to David Schellenbarger, but denies that that deed conveyed the south 15.02 acres of the N. W. ¼ of the N. W. ¼ of section 30, or that it was erroneously recorded in Book A of Deeds, but avers that said deed described and conveyed the north 15.02 acres of this quarter quarter; and that the record in Book A, at pages 492, 493, is a true record of the deed. The answer

admits the execution and record of the deeds from Schellenbarger and wife to Charles J. Doolittle and from Charles J. Doolittle to Ormus H. Doolittle, and of the mortgage from Ormus H. to Charles J., alleged in the bill, but denies all fraud and evil intent; avers that Schellenbarger was the owner of the tract in question, and that defendants were *bona fide* purchasers for value, without notice of any defects in Schellenbarger's title or claims of complainant or his grantees; and denies all the other material allegations of the bill.

*Thompson & Taylor* and *George B. Young*, for complainant.

*John W. Pinch* and *Samuel Whaley*, for defendants.

Before SANBORN, Circuit Judge, and NELSON, District Judge.

SANBORN, Circuit Judge. The first question in this case is whether Hoyt and wife, by their deed of June 21, 1850, described and conveyed to Schellenbarger 15.02 acres off the north side or off the south side of the N. W. ¼ of the N. W. ¼ of section 30, and if it is found that the deed in question did not describe and convey the north 15.02 acres, that finding is decisive of the case; for, if Hoyt never conveyed this tract to Schellenbarger, his deed to defendant Doolittle conveyed nothing, and none of the defendants have any title to this property. It is established by the proofs that whatever title remained in Hoyt after he made this deed to Schellenbarger passed to and was vested in complainant in A. D. 1856, that the deeds by which this title so passed were all recorded as early as the close of that year, and that whatever title Schellenbarger had after the delivery of the Hoyt deed to him has passed to defendant Ormus H. Doolittle under the deeds in evidence. The original deed from Hoyt to Schellenbarger is not produced, nor is there among the proofs the testimony of any witness who has read this deed as to its contents. It does appear that Schellenbarger caused this deed to be recorded in Book A, and after its record it was returned to him; that he did not cause it to be recorded in Book K of Deeds, in 1854; and that after that record the instrument there recorded was delivered to one S. Walker. The record in Book K of Deeds varies from that in Book A in 19 particulars, 2 of which are material variances and 17 are immaterial. One of these material variances is that the 15.02 acres is described in Book A as off the north side, while in Book K it is described as off the south side, of the quarter quarter. Defendants' counsel claim that under this proof the presumption is that the record in Book A is the only correct record of the original deed, and that the record in Book K must be presumed to be the record of some other deed, or of the original deed after it had been changed and made to describe other property than that which it really conveyed.

We have been forced to a different conclusion. Each of these records discloses a deed bearing the same date, having the same grantors, the same grantee, the same consideration, the same long descriptions with but two material variances, and an acknowledgment dated the same day and signed by the same notary public. Mr. Schellenbarger testifies that he never obtained but one deed from Mr. Hoyt, and it seems to us that

the presumption that both of these records are records of the same deed, but that there are mistakes in one of them, is in itself much less violent than it is to presume that the later record is of another deed procured by some third party, or that it is the record of the original deed, unlawfully mutilated and changed to convey other property than that originally described in it, and that the register, in 1854, recorded such a spurious instrument as the record of an original and valid deed. Hence we conclude that these two records are records of the same instrument, and, as in the description, which is material in this case, we find the word "north" written in Book A where the word "south" is written in Book K, one of these records must be erroneous in this particular, and we come to consider which it is.

Defendants' counsel contend that the statute authorizes one record of a deed, and no more, and hence that the record in Book A of Deeds is the only record of this deed that is entitled to weigh as evidence of its contents. We do not so understand the law. We think the statute does not limit the effect of the register's record of a deed as evidence to the first record thereof, but gives at least equal weight as evidence to later records, properly made. Gen. St. Minn. 1878, p. 537, § 21; Id. p. 805, § 96. We have, then, two records of this deed, each evidence of its contents, and possibly, in the first instance, equally entitled to credence.

An examination of the two records, however, inclines the mind to the conclusion that the scribe who made the record in Book K was more careful and painstaking than he who made the record in Book A. There are eight instances where a written word, expressing a number, is followed by the figures expressing the same number in brackets in K, while these figures and brackets do not appear at all in A. The repetition of these numbers makes no change in the meaning or legal effect of the instrument, and it is inconceivable that any one would have interpolated these figures after the first record. The only rational inference is that they were in the original deed, and the more careful scribe recorded them, while the less careful omitted them; so that a comparison of the two records leads to the conclusion that the later record is more likely to be correct. Again, if the deed read as does the record in K, it conveyed 50 acres in one body; if as in A, the 15.02 acres were separated by an intervening tract from the 34.98 acres there described; and Mr. Schellenbarger testifies that he bought this 50 acres of Hoyt in one body; that in the succeeding year he sold the same 50 acres he bought of him back to Mr. Hoyt; and the deeds he made to carry out this resale to Mr. Hoyt were plainly intended to describe, and the later one does describe, the south 15.02 acres, and neither of them describes the north 15.02 acres. From 1856 to 1887 Mr. Stinson, the complainant, paid all the taxes and about $3,000 of assessments on the property here in controversy for grading streets through it, and Mr. Schellenbarger, who for years resided within 10 miles of this land, never exercised any acts of ownership over or claimed any title or interest in any of this north 15.02 acres. These facts, which are proved by this record, have forced us to the conclusion that the deed from Hoyt to Schellenbarger

never in fact described or conveyed the north 15.02 acres of the N. W. ¼ of the N. W. ¼ of this section 30. This disposes of this case, and the question of the *bona fides* of the defendants becomes immaterial; but we are satisfied from the evidence that, before either of the defendants obtained any conveyance of this land, at least four of the complainant's grantees were occupying houses standing upon this north 15.02 acres, claiming title under the complainant and Hoyt. This was notice of complainant's rights and title. *Morrison* v. *March*, 4 Minn. 429, (Gil. 325;) *New* v. *Wheaton*, 24 Minn. 409. The proofs also establish the fact that this 15-acre tract was worth at least $50,000 in 1888; that defendant Charles J. Doolittle discovered the condition of the title to this tract by examining the title to the south 15 acres of the quarter quarter, as he was negotiating a loan upon it; that he examined all the general indexes in the register's office under the letter S to see if Schellenbarger had conveyed this northerly 15 acres. And he testifies "he did not know how much interest he [Schellenbarger] might have there, but at any rate he thought he would go into it for a speculation, and risk a little money in it, and there might be something in it." He then obtained a quitclaim deed of Schellenbarger and wife, for which he paid $30. About a year afterwards, in August, 1889, he conveyed to his brother, Ormus, for $3,200, ($500 cash and the $2,700 mortgage on the land,) and then first recorded his deed from Schellenbarger. Ormus never saw the land, although he lives within 75 miles of it, and knew nothing of its value, but bought it solely on his brother's representations to him. Under this proof the defendants have no better title in equity or at law than Schellenbarger had, in any event, and Schellenbarger's testimony shows that he had none in equity, and we have found he had none at law. The complainant is entitled to the relief prayed for in the bill. Let a decree be entered accordingly.

NELSON, District Judge, concurs.